# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **MANABU SAEKI,**<br>     Plaintiff,<br><br>v.<br><br>**JOHN BEEHLER,**<br>     Defendant. | **Case No. 1:20-cv-857-CLM** |

## MEMORANDUM OPINION

Manabu Saeki sued Jacksonville State University ("JSU") and the former President of JSU, Dr. John Beehler, for discrimination and retaliation. (Doc. 25). The court already dismissed with prejudice Saeki's claims against JSU. (Doc. 40). Now Beehler moves for summary judgment, asking the court to dismiss Saeki's claims against him. (Doc. 56). As explained within, the court will **GRANT** Beehler's motion for summary judgment. (Doc. 56).

## FACTUAL ALLEGATIONS

Saeki—a male of Japanese race, ancestry, or ethnicity who was born in Japan—is an Associate Professor at JSU. Saeki says that he "has been an exemplary employee" at JSU (doc. 25, p. 5) and that Beehler denied his request for a promotion because of his race.

### A. Saeki's Application for Promotion

1. Saeki applied for a promotion to the position of Professor in the Fall of 2016. In support of his application, Saeki submitted a portfolio, which included "his educational employment history, credentials, list of publications, list of service activities, and a self-evaluation." (Doc. 58, p. 8) Saeki's portfolio included student evaluations. In some, the students gave Saeki low ratings, but overall, the ratings were "average to above average." (*Id.*).

Despite the application saying that "evidence of projects completed in

two or more peer-reviewed articles/creative activities in the applicant's discipline or equivalent" was among the "minimum standards for application for tenure and/or promotion," Saeki did not identify any grants or presentations in his application or portfolio, (Doc. 57-9, p.1). Nor did Saeki provide copies of his publications, as he admitted at his deposition:

> Q: You did not submit a hard copy of your book?
>
> A: Right, I did not.
>
> Q: Did you submit a hard copy of any publication?
>
> A. No. I think I decided to submit—the website Amazon or publisher about my book and my article, and I didn't submit [a] hard copy of my publication.

(Doc. 57-2, p. 63). Saeki's Dean and Acting Department Head recommended that Saeki be promoted, but Provost Rebecca Turner did not support Saeki's promotion. (Doc. 57-9, p.3). Turner recommended that Beehler deny Saeki's application, noting that Saeki's portfolio lacked the "requisite accomplishments and proof of such work." (Doc. 58, p. 9).

2. Beehler reviewed Saeki's application and "concluded that Saeki's [p]ortfolio and the supporting evidence did not meet the required standard for promotion to professor." (*Id.* at 9–10). Beehler says that he denied Saeki's application because: "(a) Saeki had no presentations or grants to his credit; (b) Saeki's teaching and service both did not reflect the sustained excellence required of professors; and (c) Saeki's publications were not included in his evidence file." (Doc. 58, p. 10).

Saeki appealed Beehler's decision. After reviewing Saeki's portfolio, the Appeals Committee recommended that Beehler reconsider Saeki's application. (Doc. 58, p. 11). Beehler reconsidered, then he affirmed his initial denial of Saeki's application. (*Id.*) Saeki has not re-applied for promotion. (*Id.*).

3. Beehler says that he did not know Saeki's race, ancestry, or national

origin when he denied Saeki's application, and he did not consider them to be factors when he affirmed his initial decision. (Doc. 58, p. 12). Saeki, on the other hand, says that Beehler knew his race, ancestry, or national origin because: (1) Beehler knew his name, and (2) the Dean's recommendation letter referenced "Saeki bringing 'diversity' to the department." (Doc. 63, pp. 3–4).

### B. Possible Similarly Situated Comparators

During the same promotional cycle that Saeki applied for promotion, Beehler also denied promotion applications from two white female associate professors. (*Id.* at 12).

Before Beehler became JSU's president and before Saeki applied for the promotion, white employees Lori Owens and Timothy Barnett were both promoted to the position of Professor at JSU. Saeki claims that Owens and Barnett's qualifications were "plainly inferior" to his (doc. 25, p. 3) and that neither was published when they received their promotions. (Doc. 63, p. 5). But Saeki also testified that he had not seen Owens or Barnett's portfolios and did not know whether Owens or Barnett provided copies of publications in their portfolios or whether they identified any presentations or grants in their portfolios. (Doc. 57-2, p. 20). JSU later produced Owens and Barnett's portfolios, which show that both Owens and Barnett *were* published when they submitted their applications. (Doc. 64-1).

### STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

3

## ANALYSIS

Beehler asks the court to dismiss all claims against him. (Doc. 56). In Saeki's response to Beehler's motion for summary judgment, Saeki stated that he "does not oppose [Beehler's] motion [for summary judgment] with respect to his retaliation claim." (Doc. 63, p. 3 n.1). Because Saeki agrees that the court should dismiss "Count IV: Retaliation," the court will dismiss this claim with prejudice. That leaves Saeki's § 1981 failure-to-promote claim against Beehler in his individual capacity: "(Count II) Discrimination on the Basis of Race, Ancestry, and Ethnicity." (Doc. 25).

Saeki alleges Beehler violated § 1981 by denying Saeki's application for promotion to professor because of his race. Beehler argues that the court should dismiss this claim because: (1) it is barred by qualified immunity; (2) Saeki failed to present a prima facie case of discrimination; (3) Saeki failed to present evidence to rebut Beehler's nondiscriminatory reasons for declining to promote Saeki; and (4) Saeki's failure to promote claim is barred by a two-year statute of limitations. (Doc. 58). Below, the court explains why Beehler is entitled to summary judgment on each of his first three arguments. So the court needn't address the fourth (*i.e.,* the statute of limitations).

### I. Qualified Immunity bars Saeki's § 1981 claim.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). That means there are two relevant questions:

1. Was Beehler acting within the scope of his discretionary authority when he denied Saeki's application; and,
2. Did Beehler violate a clearly established law when he denied Saeki's application?

*See Sims v. Metropolitan Dade Cty.*, 972 F.2d 1230, 1236 (11th Cir. 1992).

Saeki does not contest that Beehler was acting within the scope of his discretionary authority, so only the second question matters. It is Saeki's burden to prove that Beehler violated a clearly established law, and it is the court's job to determine whether Saeki met his burden. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("whether the conduct of which the plaintiff complains violated clearly established law" is a question of law for the court to decide).

To meet his burden, Saeki must show both that Beehler's alleged conduct violated a constitutionally protected right and that the right was clearly established at the time of the misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Grider v. City of Auburn*, 618 F.3d 1240, 1254 (11th Cir. 2010). As for the latter, Saeki has a "constitutional right to be free from racial discrimination in the employment context." *See Ham v. City of Atlanta*, 386 F. App'x 899, 903 (11th Cir. 2010).

But Saeki does not present evidence that Beehler *violated* this right. That Beehler knew Saeki's name and that the Dean referenced "diversity" in her letter of recommendation does not show that Beehler considered Saeki's race, ancestry, or ethnicity when he denied Saeki's application. *See Matthews v. Waukesha Cty.*, 759 F.3d 821, 827 (7th Cir. 2014) (describing the plaintiff's contention that decision-makers inferred the race of certain job applicants from their names as one of those evidentiary "flights of fancy" consisting of precisely "the type of speculation and conjecture that [courts] have repeatedly deemed insufficient to avoid summary judgment"); *Hedzik v. Metropolitan Atlanta Rapid Transit Auth.*, 2006 WL 8431557 (N.D. Ga. April 14, 2006) (declining to make an inferential leap that the decision-maker knew the plaintiff's race absent evidence). Nor does the fact that a *previous* JSU president promoted two white professors prove that *Beehler* considered Saeki's race years later. Plus, those employees listed their publications in their application portfolios, meaning that their promotions would not provide evidence of differential treatment of similarly situated employees if Beehler had made all three decisions. So Saeki cannot overcome Beehler's claim of qualified immunity.

5

## II. Saeki cannot prove discrimination.

Even if Beehler did not have qualified immunity, Beehler is entitled to summary judgment because Saeki can neither prove a prima facie case of discrimination, nor that Beehler's race-neutral explanations are pretext.

### A. Prima Facie case

"To establish a prima facie case of discrimination based on a failure to promote, Saeki must show that he: (1) belongs to a protected class; (2) applied for and was qualified for a promotion; (3) was rejected despite his qualifications; and (4) other equally or less-qualified employees outside his protected class were promoted." *Johnson v. Coffee Cty. Comm'n*, 714 F. App'x 942, 946 (11th Cir. 2017) (citation omitted). "The comparators for the fourth prong must be 'similarly situated in all relevant respects.'" *McNeal v. Tarrant*, 325 F. App'x 794, 796 (11th Cir. 2009) (citation omitted).

Beehler does not dispute that Saeki belongs to a protected class and that Beehler denied Saeki's application for a promotion. He disputes the other two elements: qualification and promotion of similarly situated comparators.

The court finds that, if a reasonable juror views the evidence in a light most favorable to Saeki, that juror could find that Saeki was qualified for the promotion. But Saeki fails to offer evidence that would allow the reasonable juror to find that Beehler promoted similarly situated employees outside of Saeki's protected class.

Saeki names only two comparators: white employees Lori Owens and Timothy Barnett. But Owens and Barnett are not proper comparators because they were promoted years earlier by a different JSU president and both included their publications in their portfolios—a fact Saeki didn't know when he named Owens and Barnett as comparators. (Doc. 64-1, pp. 4-7, 31). Because Saeki offers no evidence that Beehler promoted another similarly situated person, Saeki would be unable to prove a prima facie case of discrimination at trial.

### B. Pretext

Even if Saeki made out a prima facie case of discrimination, he could not prove to a reasonable juror that Beehler's race-neutral reasons for denying his application were pretext. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1028 (11th Cir. 2000) ("[The defendant's nondiscriminatory reasons eliminated the presumption of discrimination, thereby shifting the burden to [the plaintiff] to come forward with sufficient evidence to permit a reasonable factfinder to find that those reasons were pretextual.").

Beehler offers three race-neutral reasons for his decision not to promote Saeki: "(1) [Saeki] had no presentations or grants to his credit, (2) his teaching and service both did not reflect the sustained excellence required of professors, and (3) his publications were not included in his evidence file." (Doc. 58, p. 25). Saeki testified that he did not identify any presentations or grants in his portfolio, he did not submit hard copies of his publications with his portfolio, and his application included low ratings. So Saeki cannot "cast sufficient doubt on [Beehler's] proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that [Beehler's] proffered legitimate reasons were not what actually motivated [Beehler's] conduct." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir.1997) (citation and quotations omitted); *see also Crawford v. City of Fairburn*, 482 F.3d 1305, 1308 (11th Cir. 2007) (noting that where "the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of these reasons to survive a motion for summary judgment.").

—

To sum up, Saeki could neither prove a prima facie case nor pretext if this case went to trial. So Beehler is entitled to summary judgment.

## **CONCLUSION**

For these reasons, the court will enter a separate order that **GRANTS** Beehler's motion for summary judgment (doc. 56) and **DISMISSES WITH PREJUDICE** Saeki's claims against Beehler.

DONE on July 18, 2022.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE